FILED
2ND JUDICIAL DISTRICT COURT
Bernalillo County
8/25/2025 12:39 PM
KATINA WATSON
CLERK OF THE COURT
Miquela M Ortiz

STATE OF NEW MEXICO
COUNTY OF BERNALILLO
SECOND JUDICIAL DISTRICT COURT

ANTONIO GARCIA,

       Plaintiff,

v.                                            No. D-202-CV-2025-06771

LHM SWH, LLC d/b/a
LHM SOUTHWEST HYUNDAI ALBUQUERQUE,
LIBERTY MUTUAL INSURANCE COMPANY and
HYUNDAI CAPTIAL AMERICA, d/b/a HYUNDAI MOTOR FINANCE,

       Defendants.

## FIRST AMENDED COMPLAINT FOR DAMAGES

1. LHM Southwest Hyundai sold Plaintiff Antonio Garcia a new vehicle that had suffered prior damage. The dealer did not disclose the damage at the time of the sale.

2. LHM Southwest Hyundai also misrepresented the price of the vehicle.

3. Plaintiff brings claims for violations of the New Mexico Unfair Practices Act, NMSA § 57-12-1 *et.seq.*, the New Mexico Motor Vehicle Dealer Franchise Act ("MVDFA"), NMSA § 57-16-1 *et seq.*, and for fraud.

### Parties

4. Plaintiff Antonio Garcia ("Mr. Garcia") is an individual residing in Albuquerque, New Mexico.

5. Defendant LHM SWH, LLC, d/b/a Southwest Hyundai Albuquerque ("Southwest Hyundai" or "the dealer") is a foreign corporation and licensed motor vehicle dealer, operating a new and used motor vehicle dealership in Albuquerque, New Mexico.

6. Defendant Liberty Mutual Insurance Company ("Liberty") is an insurance company that provides motor vehicle dealer surety bonds for New Mexico motor vehicle dealers. Liberty

**EXHIBIT A**

provided the surety bond necessary to license Southwest Hyundai as a motor vehicle dealer, pursuant to NMSA 1978 § 66-4-7, at the time Southwest Hyundai sold the vehicle at issue to Mr. Garcia.

7. Sureties of auto dealer consumer protection bonds, here Liberty, are liable for any actual damages for fraud awarded against their principal dealers – here, Southwest Hyundai. *See*, NMSA 1978 § 66-4-7(B) ("bond shall be payable . . . of any loss, damage and expense sustained by the purchaser or his vendees, or both, by reason of . . . any fraudulent misrepresentations"). *See also*, *McAlpine v. Zangara Dodge, Inc.*, 2008 NMCA 64, 183 P.3d 975 (N.M. Ct. App. 2008) (auto dealer consumer protection surety bond statute covers fraud by the dealer).

8. Sureties of auto dealer consumer protection bonds are liable for any attorney fees and costs expended by a consumer in prosecuting a fraud claim against a dealer. *See*, *Yoakum v. Western Casualty and Surety Company*, 75 NM 532-33, 531, 407 P.2d 367, 369 (N.M. 1965).

9. Defendant Hyundai Capital America, d/b/a Hyundai Motor Finance, is a foreign corporation, doing business in New Mexico. Hyundai Motor purchases financing contracts for motor vehicles.

## Facts

10. On or about November 29, 2024, Mr. Garcia went to Southwest Hyundai with his mother, Nancy Corea, and his sister, Andeli Garcia. Mr. Garcia wanted to buy a new Hyundai Palisades, primarily for his mother.

11. Mr. Garcia met with Southwest Hyundai saleswoman Jacqueline, who showed Mr. Garcia three new Palisades and one used Palisades.

12. Mr. Garcia chose the mid-level trim, new 2025 Hyundai Palisades ("the Vehicle").

13. The advertised sales price of the Vehicle was $43,905, as set forth on the federally required Monroney sticker. There were no supplemental dealer stickers disclosing any additional charges.

14. Based on Southwest Hyundai's representations of material facts and omission of material facts, Mr. Garcia decided to purchase the Vehicle.

15. On November 29, 2024, Mr. Garcia signed sales and financing paperwork. The sales contract listed the sales price as the advertised $43,905, plus $647 "optional accessories," for a "Total Vehicle Purchase Price" of $44,552.

16. The optional accessories were identified on a separate document as including "door edge guards," "door cup guards," and "window tint."

17. Mr. Garcia told Southwest Hyundai that he did not want these optional accessories, but the dealer told him that the items were added by the manufacturer and were not optional. This statement was a misrepresentation.

18. Southwest Hyundai also added a $1,000 GAP policy and a $3,500 service contract to the sales contract.

19. The service contract is worthless on a new vehicle that comes with a manufacturer's warranty.

20. Mr. Garcia made a $10,000 cash down payment. Southwest Hyundai agreed to finance the balance.

21. Southwest Hyundai then assigned the Retail Installment Sales Contract ("RISC") to Hyundai Capital America.

22. The RISC reads that "any holder of this consumer credit contract is subject to all claims and defenses which the debtor could assert against the seller of goods, up to the amounts paid

under the retail installment contract."

23. Hyundai Capital America is the holder of the RISC.

24. Mr. Garcia has made payments to Hyundai Capital America, as per the terms of the RISC.

25. On November 30, 2024, Mr. Garcia noticed that the trim on the front right fender was faded and dull.

26. Mr. Garcia contacted Jacqueline, who said Southwest Hyundai would replace the fender. She made an appointment for Mr. Garcia to bring the Vehicle to the dealer on December 4.

27. Mr. Garcia took the Vehicle to Southwest Hyundai on December 4, but it did nothing to the Vehicle.

28. Mr. Garcia made an appointment for December 20, to have the fender replaced. This time, the dealer re-touched the paint.

29. On December 20, Jacqueline called Mr. Garcia to tell him that Southwest Hyundai had found bondo on the Vehicle, using a blue light. She implied that Mr. Garcia had damaged theVehicle and repaired it.

30. Mr. Garcia denied that the Vehicle had been damaged since he bought it.

31. On December 28, Mr. Garcia, and his mother and sister, went to Southwest Hyundai and met with Jacqueline and her manager.

32. Mr. Garcia asked to return the Vehicle, given the prior damage.

33. Southwest Hyundai refused.

34. On December 30, Mr. Garcia's mother and sister met with the dealer's General Manager, Josh, who told them he would send the Vehicle to a body shop for repairs.

35. Southwest Hyundai sent the Vehicle to New Mexico Collision. Upon information and belief, New Mexico Collision replaced the bumper and a bracket, and did some paint work.

4

EXHIBIT A

36. Mr. Garcia was still unhappy with the appearance of the Vehicle.

37. Mr. Garcia complained to Southwest Hyundai, who sent New Mexico Collision to his house. New Mexico Collision indicated that "they" had worked on the Vehicle prior to his purchase of it, and that is when the bondo was used on the Vehicle.

38. The prior damage, repairs and alterations to the Vehicle were in excess of 6% of the sales price, yet Southwest Hyundai did not provide Mr. Garcia with an affidavit disclosing the repairs and alterations, as required by the New Mexico Unfair Practices Act ("UPA"), NMSA 1978 § 57-12-6.

39. Mr. Garcia would not have bought the Vehicle if he had known about the prior damage, repairs and alterations.

40. Southwest Hyundai's actions were malicious, willful, reckless, wanton, fraudulent, in bad faith and wanton disregard of Mr. Garcia's legal rights.

41. An award of punitive damages appropriate to deter this illegal practice.

42. As a result of Southwest Hyundai's actions, Mr. Garcia has suffered actual damages, including, but not limited to, paying a price in excess of the fair market value of the Vehicle, loss of money, emotional distress, aggravation, frustration and inconvenience.

**First Claim for Relief: Violations of the Unfair Practices Act**

43. The foregoing transactions occurred in the regular course of Southwest Hyundai's trade or commerce, and its actions are subject to the UPA.

44. The foregoing actions constitute unfair or deceptive trade practices, within the meaning of the UPA, NMSA 1978 §§ 57-12-2D, 57-12-6, and regulations issued pursuant to the UPA, including NMAC 12.2.4.21 (D) and 12.2.4.27.

45. Southwest Hyundai willfully engaged in these unlawful trade practices.

46. As a result, Mr. Garcia is entitled to statutory or actual damages, trebled, plus attorney fees and costs.

## Second Claim for Relief: Violation of the MVDFA

47. Defendant Southwest Hyundai is a "motor vehicle dealer" within the meaning of the MVDFA, NMSA § 57-16-3.

48. Defendant willfully defrauded Mr. Garcia, contrary to the MVDFA, NMSA § 57-16-4(C).

49. Southwest Hyundai used false, deceptive or misleading advertising, contrary to the MVDFA, NMSA § 57-16-4(B).

50. Southwest Hyundai acted maliciously.

51. Mr. Garcia is entitled to recover actual damages and punitive damages not to exceed three times the actual damages, plus costs and attorney fees.

## Third Claim for Relief: Fraud

52. Southwest Hyundai induced Mr. Garcia to purchase the Vehicle by misrepresentation of material facts and by omission of material facts, as set forth above, including but not limited to, failing to disclose the prior damage, alterations, repairs, misrepresenting the sales price, and misrepresenting that the optional accessories were added by the manufacturer.

53. Southwest Hyundai knew such representations to be false, or it made those representations recklessly, or Southwest Hyundai had no reasonable grounds for believing those representations were true. Southwest Hyundai also knew that its omissions were material and important.

54. Southwest Hyundai intended to deceive Mr. Garcia and intended that he would rely upon its representations, which he did, to his detriment, suffering damages thereby.

EXHIBIT A

WHEREFORE, Plaintiff prays that this Honorable Court:

    a. Award actual or statutory damages, trebled, for violations of the UPA.

    b. Award actual damages and punitive damages for fraud;

    c. Award actual damages, trebled, for violations of the MVDFA;

    d. Award reasonable attorney's fees and costs;

    e. Grant such other relief as it deems just and proper.

Respectfully submitted,

FEFERMAN, WARREN & MATTISON

*/s/ Susan Warren*
SUSAN WARREN
300 Central Ave., SW, Suite 2000 West
Albuquerque, NM 87102
(505) 243-7773
(505) 243-6663
swarren@fwmlegal.com
Attorneys for Plaintiff

7
EXHIBIT A