**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

ANTONIO GARCIA,

      Plaintiff,

v.                                                                                           No. 1:25-cv-942-JMR-KRS

LHM SWH, LLC, doing business as
LHM SOUTHWEST HYUNDAI ALBUQUERQUE;
LIBERTY MUTUAL INSURANCE COMPANY;
and HYUNDAI CAPITAL AMERICA, doing
business as HYUNDAI MOTOR FINANCE,

      Defendants.

**MEMORANDUM OPINION AND ORDER**

Currently before the Court is Plaintiff's Opposed Motion To Compel Defendant LHM SWH, LLC To Provide Complete Responses To First Set Of Discovery ("Motion") (Doc. 41). The Court previously issued a partial ruling on the Motion, while taking the unresolved discovery disputes under advisement. *See* Order entered on February 25, 2026 (Doc. 69). The portions of the Motion previously taken under advisement are now granted in part and denied in part as set forth below.

**FACTUAL BACKGROUND**

The following background facts are taken from the allegations in the First Amended Complaint For Damages. *See* (Doc. 1-2).

LHM SWH, LLC, d/b/a Southwest Hyundai Albuquerque ("LHM SWH" or "the Dealership") operates an automobile dealership in Albuquerque, New Mexico, which sells both new and used vehicles. Plaintiff Antonio Garcia purchased a new 2025 Hyundai Palisades ("the Vehicle") from LHM SWH on or about November 29, 2024. The advertised, i.e., sticker sales price for the Vehicle was $43,905.00. The sales contract listed the sales price as $43,905.00, plus

$647.00 in "optional accessories," for a "Total Vehicle Purchase Price" of $44,552.00. The optional accessories were identified on a separate document as including "door edge guards," "door cup guards," and "window tint." Plaintiff alleges that he told LHM SWH that he did not want these optional accessories, but he was informed that the items were added by the manufacturer and were not optional.

On November 30, 2024, Plaintiff noticed that the trim on the front right fender of the Vehicle was faded and dull. Plaintiff contacted Jacqueline, the salesperson who sold him the Vehicle, who said that the Dealership would replace the fender. Jacqueline made an appointment for Plaintiff to bring the Vehicle in on December 4, 2026. When Plaintiff brought the Vehicle in for the appointment, however, the Dealership "did nothing to the Vehicle." (*Id.* ¶ 27). Plaintiff made another appointment for December 20 to have the fender replaced. After bringing the Vehicle in on December 20, Jacqueline called Plaintiff to tell him the Dealership "had found bondo on the Vehicle, using a blue light." (*Id.* ¶ 29). Plaintiff alleges that Jacqueline implied that Plaintiff had damaged the Vehicle and repaired it, which Plaintiff denied. (*Id.* ¶¶ 29-30). The Dealership re-touched the paint during this appointment and returned the car to Plaintiff. (*Id.* ¶ 28).

On December 28, Plaintiff met with Jacqueline and her manager, at which time Plaintiff stated he wanted to return the Vehicle given the prior damage. LHM SWH refused to accept a return of the Vehicle. (*Id.* ¶¶ 31-33). On December 30, Plaintiff met with the Dealership's General Manager, Josh, who said he would send the Vehicle to a body shop for repairs. (*Id.* ¶ 34). Plaintiff alleges that the Dealership sent the Vehicle to New Mexico Collision, and that, upon information and belief, New Mexico Collision replaced the bumper and a bracket, and also did some paint work. (*Id.* ¶ 35). Plaintiff alleges that he subsequently complained to the Dealership that he was still unhappy with the appearance of the Vehicle, and that the Dealership responded by sending

2

New Mexico Collision to Plaintiff's house. (*Id.* ¶ 36). New Mexico Collision allegedly "indicated [to Plaintiff] that 'they' had worked on the Vehicle prior to [Plaintiff's] purchase of it, and that is when the bondo was used on the Vehicle." (*Id.* ¶ 37).

The First Amended Complaint alleges that LHM SWH misrepresented the sales price of the Vehicle, and also misrepresented that the optional accessories were added by the manufacturer rather than the Dealership. Additionally, the First Amended Complaint alleges that LHM SWH sold Plaintiff a new vehicle that had suffered prior undisclosed damage. "The prior damage, repairs and alterations to the Vehicle were in excess of 6% of the sales price, yet [the Dealership] did not provide [Plaintiff] with an affidavit disclosing the repairs and alterations," as allegedly required under New Mexico law. Based on these allegations, the First Amended Complaint asserts claims for fraud, violations of the New Mexico Unfair Practices Act ("UPA"), NMSA § 57-12-1 *et seq.*, and violations of the New Mexico Motor Vehicle Dealer Franchise Act ("MVDFA"), NMSA § 57-16-1 *et seq.*

## PROCEDURAL HISTORY

Plaintiff filed the Motion on January 19, 2026, seeking an order overruling LHM SWH's objections to Plaintiff's written discovery requests, and compelling additional responses to ten Interrogatories and eight Requests for Production ("RFP"). After Plaintiff filed the Motion, LHM SWH served Plaintiff with three supplemental responses. *See* (Doc. 62 at 1). According to Plaintiff, the supplemental responses resolved two of the disputed Interrogatories and two of the disputed RFPs. (*Id.*). The Court held an informal discovery conference on February 23, 2026, to address the remaining disputed discovery requests. During the conference, the Court made the following partial ruling:

> To the extent that there are objections interposed to any of the
> discovery requests where it is not clear whether information or

> documents were withheld based upon those objections, the Court will order Defendant LHM SWH to make the withholding of information or documents clear in the response. And if something is withheld based upon an asserted privilege, LHM SWH must produce a privilege log with the response. If no information or documents were withheld based upon the objections, then the response needs to make that clear as well.

(Doc. 64 (Clerk's Minutes)); *see also* Doc. 69 (Order ¶ 2).

During the informal discovery conference, LHM SWH's counsel stated that she would like the opportunity to respond to arguments made in Plaintiff's reply brief in support of the Motion. It was determined at that time that LHM SWH would serve supplemental discovery responses in compliance with the Court's partial ruling, following which Plaintiff would file a Notice indicating which discovery requests were still in dispute. After Plaintiff filed the Notice, LHM SWH would file a written surreply to address any arguments in Plaintiff's reply brief concerning discovery requests that remained in dispute. The Court ordered LHM SWH to serve its supplemental discovery responses by March 11, 2026; Plaintiff to file his Notice by March 27, 2026; and LHM SWH to file its surreply brief by April 3, 2026. *See* (Docs. 64, 69). The Court stated in its February 25, 2026 Order summarizing what was decided at the February 23 discovery conference that it would issue a written ruling on the remaining unresolved discovery issues following Plaintiff's filing of the Notice identifying those issues *and* LHM SWH's filing of its surreply brief. (Doc. 69 ¶ 8).

It appears that LHM SWH timely served Plaintiff with its supplemental responses, *see* (Doc. 72), and Plaintiff filed his Notice as directed, *see* (Doc. 79). LHM SWH, however, did not file a surreply by the April 3, 2026 deadline, and, to date, no surreply or other filing has been made by LHM SWH on the Motion. Accordingly, the Court finds that the Motion is ripe for ruling.

**LEGAL STANDARD**

Rule 26 of the Federal Rules of Civil Procedure provides that [p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" FED. R. CIV. P. 26(b)(1). A matter is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence; and ... the fact is of consequence in determining the action." FED. R. EVID. 401. Discovery is proportional to the needs of the case based upon an evaluation of "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." FED. R. CIV. P. 26(b)(1).

Generally speaking, the scope of discovery is broad to empower parties "to obtain the fullest possible knowledge of the issues and facts before trial." *Hickman v. Taylor*, 329 U.S. 495, 501 (1947). The court "must weigh the factors ... so as not to 'deprive a party of the fair opportunity to develop and prepare a case.'" *Smith v. Pfizer, Inc.*, No. 98-cv-4156-CM, 2000 WL 1679483, at *2 (D. Kan. Oct. 26, 2000) (citation omitted). When the relevancy of the discovery request is not readily apparent on its face, the party seeking the discovery has the burden to show the relevancy of the request. *Moses v. Halstead*, 236 F.R.D. 667, 671 (D. Kan. 2006). When the moving party meets its initial burden of demonstrating relevance, or if the discovery appears relevant on its face, the burden shifts to the party resisting the discovery to establish "that the requested discovery does not come within the scope of relevance as defined under Rule 26(b)(1), or is of such marginal relevance that the potential harm occasioned by the discovery would outweigh the ordinary presumption in favor of broad disclosure." *Id.* Ultimately, the Court "is afforded broad discretion in the resolution of non-dispositive discovery disputes," and its determination of whether to compel discovery will be "overrule[d] only if this discretion is clearly abused." *Alsaadi v.*

*Saulsbury Indus., Inc.*, No. 2:23-CV-291 KG/KRS, 2024 WL 1617639, at *2 (D.N.M. Apr. 15, 2024).

**DISCUSSION**

Plaintiff's Notice states that the Motion has been resolved as to the following Interrogatories: Nos. 2, 12, 13, and 15. *See* (Doc. 79). Accordingly, the Motion is denied without prejudice as moot insofar as these written discovery requests are concerned. The Notice states that the following discovery requests are still in dispute: Interrogatory No. 4 and RFP No. 4; Interrogatory No. 6; Interrogatory No. 10 and RFP No. 2; Interrogatory No. 11; RFP Nos. 6 and 7 (partially resolved); and RFP No. 11. *See* (*id.*). The Court addresses the parties' remaining disputes concerning the listed discovery requests below.

A.    **SALES TO OTHER CUSTOMERS OF VEHICLES WITH PRIOR UNDISCLOSED DAMAGE (INTERROGATORY NO. 4 AND RFP NO. 4)**

Interrogatory No. 4 asks LHM SWH to identify all customers to whom it sold vehicles that suffered prior damage or alteration where the cost of repair or alteration exceeded 6% of the sales price of the vehicle. The original requested time-frame for the disclosure was January 1, 2020 to present. *See* (Doc. 42-1 at 5). RFP No. 4 asks that, for each customer identified in response to Interrogatory No. 4, LHM SWH produce the following documents: (a) documents regarding LHM SWH's purchase of the vehicle; (b) documents regarding LHM SWH's appraisal, inspection, and repairs of the vehicle; (c) the sales contract, buyers order, and financing contract and/or lease; and (d) all disclosures of prior damage. (*Id.* at 18). LHM SWH's objected to Interrogatory No. 4 and RFP No. 4 as being overly broad and unduly burdensome. LHM SWH also objected that responding to the requests would reveal confidential customer information.

### 1.    *Overbreadth Objections*

LHM SWH's overbreadth objections are three-fold: (i) an objection that the covered time-period exceeds five years; (ii) an objection that the information sought includes vehicle sales that occurred after the transaction at issue; and (iii) an objection that the information sought includes both old and new vehicles (the transaction here involved only a new vehicle). *See* (Doc. 42-1 at 5, 6, 18). LHM SWH argues that the scope of Interrogatory No. 4 and RFP No. 4 should be limited to (1) new vehicles (2) sold in the five year-period (3) preceding Plaintiff's transaction, i.e., from November 29, 2020, through November 29, 2024. *See* (Doc. 52 at 6). In his reply, Plaintiff has offered to narrow the scope of Interrogatory 4 and RFP 4 to the time period of July 1, 2023 through July 31, 2025. *See*  (Doc. 62 at 5).

Plaintiff's offer to narrow the scope of Interrogatory 4 and RFP 4 to an approximate twenty-four month period renders LHM SWH's first overbreadth objection moot. Turning to LHM SWH's second overbreadth objection, the Court rejects the argument that discovery should be limited to new car sales. The purpose of Plaintiff seeking information about other sales transactions is to show that LHM SWH acted intentionally and/or that its "actions were part of a pattern or practice rather than the result of an innocent or isolated mistake." *Salmeron v. Highlands Ford Sales, Inc.*, 220 F.R.D. 667, 671 (D.N.M. 2003). LHM SWH is correct that sales transactions are not relevant unless they are similar to the sale at issue here. But similarity matters only insofar as the aspect or detail of the transaction being compared bears some relation to Plaintiff's claim or claims in the case. Whether the car was old or new is a factual distinction that does not matter to Plaintiff's claims. In either case, according to Plaintiff, LHM SWH had a legal duty to disclose any material damage to the car.[1] Therefore, used car sales without prior disclosure of damage are just as relevant

---

[1] *See* (Doc. 62 at 5 (citing *Wirth v. Com. Res., Inc.*, 1981-NMCA-057, ¶ 12, 96 N.M. 340, 345, 630 P.2d 292, 297 ("To reveal some information on a subject triggers the duty to reveal all known material facts."); *Krupiak v. Payton,*

to demonstrating a pattern or practice of nondisclosure as new car sales without prior disclosure of damage. For similar reasons, the Court also rejects LHM SWH's third overbreadth objection regarding sales of vehicles that occurred after the transaction at issue in this case. So long as the post-transaction sales are not too remote in time, the fact that the sale might have occurred after the transaction at issue here does not preclude a finding of relevance to the question of whether LHM SWH acted intentionally in a previous transaction that took place.

In sum, the Court concludes that the scope of Interrogatory No. 4 and RFP No. 4 should be all (i.e., new and used) car sales in the approximately twenty-four month time-period stated in Plaintiff's reply (July 1, 2023 to July 31, 2025).

## 2. *Objection To Disclosing Confidential Client Information*

LHM SWH argues that Interrogatory No. 4 and RFP No. 4 "seek[ ] non-party personal contact information (telephone number and home address) of former customers, which could be detrimental to the Dealership's professional relationship with such individuals and considered to be intrusive and/or harassing to such individuals." (Doc. 42-1 at 6, 18). LHN SWH actually rolls several different arguments into this one.

The first matter reflected in LHM SWH's argument is the idea that requiring the disclosure of contact information could be considered "intrusive and/or harassing." "It appears that the general basis for this inflammatory charge is that [Plaintiff's] counsel may have the temerity to

---

1977-NMSC-024, ¶ 3, 90 N.M. 252, 253, 561 P.2d 1345, 1346 ("Actionable fraud is found if a party to a transaction knows of material facts, has a duty to disclose, and remains silent. A duty to disclose may arise if there is knowledge that the other party to a contemplated transaction is acting under a mistaken belief. A duty to disclose may also arise if one has superior knowledge that is not within the reach of the other party or could not have been discovered by the exercise of reasonable diligence."); *Everett v. Gilliland*, 1943-NMSC-030, ¶ 12, 47 N.M. 269, 141 P.2d 326, 330 ("There is much authority to the effect that if one party to a contract or transaction has superior knowledge, or knowledge which is not within the fair and reasonable reach of the other party and which he could not discover by the exercise of reasonable diligence, or means of knowledge which are not open to both parties alike, he is under a legal obligation to speak, and his silence constitutes fraud, especially when the other party relies upon him to communicate to him the true state of facts to enable him to judge of the expediency of the bargain." (internal quotation marks and citation omitted))).

attempt to speak to [the customers in question]." *Ullman v. Denco, Inc.*, No. 2:14-cv-843-SMV-GBW, 2015 WL 11111288, at *2 (D.N.M. Sept. 17, 2015). But "seeking to speak to potential witnesses is not harassment,"[2] even if "citizens often prefer not to become embroiled in litigation (civil or criminal) as a witness or otherwise…. [Our] system of justice depends on citizens testifying on matters to which they are witnesses." *Id.*

The second argument LHM SWH is making is that disclosure of customer contact information could damage the Dealership's professional relationship with such individuals. A similar argument was made and ultimately rejected in *Salmeron v. Highland Ford Sales, Inc, supra.* On the one hand, the pretrial judge acknowledged the plaintiff's need for evidence to show that, like the defendant's sale of a former rental vehicle to the plaintiff, the defendant sold former rental vehicles to other customers without disclosing prior damage to the vehicle. But the pretrial judge attempted to balance that need against the "damage" the judge thought could "be occasioned to [the] [d]efendant's business should [the] [p]laintiff's attorneys contact [the] [d]efendant's former customers." *Salmeron v. Highland Ford Sales, Inc.*, Civil No. 01-432 MCA/LFG, Doc. 50, Mem. Op. & Order at 3 (D.N.M. Dec. 11, 2001); *see also id.,* Doc. 64, Order at 6-7 (Mar. 6, 2002). On appeal to the presiding trial judge, however, the court held that limiting discovery as the pretrial judge had done placed the defendant's "interests in preventing harm to its business reputation paramount to [the plaintiff's] need for disclosure," a result the court found particularly unfair "[g]iven the high burdens of proof which [the plaintiff] must carry in order to prove her case." *Salmeron*, 220 F.R.D. at 671. "Without evidence of similar failures to disclose or misrepresentations," the court said, "it would be virtually impossible for [the plaintiff] to meet her

---

[2] *See* N.M. STAT. ANN. § 30-3A-2 ("Harassment consists of knowingly pursuing a pattern of conduct that is intended to annoy, seriously alarm or terrorize another person and that serves no lawful purpose. The conduct must be such that it would cause a reasonable person to suffer substantial emotional distress.").

9

burden of proving intentional behavior by clear and convincing evidence or to establish a pattern or practice to support an award of punitive damages." *Id.*

As in *Salmeron,* "[a]ccess to [LHM SWH's] other customers is necessary in order for Plaintiff to gather such evidence, if it exists." *Id.* Furthermore, LHM SWH's assertion that disclosure of customer contact information could "cause irreparable harm to LHM's ongoing relationships with its customers" (Doc. 52 at 7) is conclusory. "[T]o shield [LHM SWH] from having to answer Plaintiff's discovery requests based on an abstract fear of lost future business is not a path on which the Court is willing to tread." *Picasso Builders, LLC v. Roofing Wholesale Co.*, No. 1:20-cv-539-GJF-JFR, 2020 WL 12739434, at *4 (D.N.M. Nov. 30, 2020) (observing that "the risk of crippling economic fallout from [the] [p]laintiff contacting a limited number of [the] [d]efendant's customers does not appear great," and concluding that the defendant's concern that it might lose future business did not outweigh the plaintiff's need for the information).

Finally, the third— and wholly separate—concern raised by LHM SWH is expressed in the Affidavit of LHM SWH's General Manager, Christopher Harvey, which is that LHM SWH's "confidential information" of customer identities and related transactional information needs to be protected from disclosure "to the public *or competitors* of LHM SWH." (Doc. 52 at 45-48, ¶ 17 (emphasis added)).[3] This argument makes little sense here, however, as Plaintiff is *not* LHM SWH's competitor.[4] A concern "about confidentiality or the disclosure of private or sensitive

---

[3] *See also* (Doc. 52 at 48, ¶ 18 ("Significant resources have been invested by LHM SWH in compiling the customer list, which provides a competitive advantage by allowing LHM SWH to market to existing customers"); *id*. ¶ 20 (stating that LHM SWH's "customer list … has immense monetary value," and that " [i]f third parties, including but not limited to other automotive retailers, were permitted to access this information, the outcome would be ruinous to LHM SWH"); *id*. ¶ 21 (stating that "LHM SWH has a trade secret protection policy, whereby LHM SWH requires each and every employee to sign an agreement limiting their use of LHM SWH's confidential information, including trade secret customer lists")).

[4] As Plaintiff points out, this objection is also likely waived, as it was not made in LHM SWH's written response to the discovery request.

information" to a non-competitor party is generally "not a sufficient basis to withhold discovery," but instead is "best addressed in the form of a protective order." *In re Bank of Am. Wage & Hour Emp. Pracs. Litig.*, 275 F.R.D. 534, 541 (D. Kan. 2011). For all of the above-discussed reasons, the Court rejects LHM SWH's objection to Interrogatory No. 4 and RFP No. 4 based on the fact that those discovery requests require the disclosure of contact information for the customers identified by LHM SWH's response.

### 3.   *Objection Regarding Undue Burden*

Finally, LHM SWH objects to Interrogatory No. 4 and RFP No. 4 on the ground that "LHM SWH does not have a record-keeping practice, system, or searchable database capable of categorizing or generating an automatic retrieval of specific information such as vehicles 'which had suffered prior damage or alteration, where the cost of repair or alteration exceeded 6% of the sales price of the vehicle.'" (Doc. 52 at 46 (Harvey Affidavit, ¶ 6)). As a result, according to LHM SWH, in order to respond to Interrogatory No. 4 and RFP No. 4, it would have to perform the "herculean task" of

> (i) … review[ing] thousands of individual deal jackets *maintained in electronic format* on a transaction by transaction basis, as LHM SWH does not record or maintain transaction data in a manner by which it might identify sales where the cost of repair or alteration exceeded 6% of the sale price of the vehicle except through manual review of each individual deal jacket; *and* (ii) … physical[ly] inspecti[ng] … hundreds of boxes containing deal jackets currently stored offsite, in order to determine whether those deal jackets, *which are not maintained electronically*, include sales responsive to the discovery request.

(Doc. 42-1 at 6 (emphasis added)).

As far as the Court can tell, the parties have not actually met and conferred over this discovery request. "[T]he meet and confer requirement requires a simultaneous exchange of views, usually during a face to face, or at a minimum, a telephonic conference wherein counsel try in

good faith to resolve the dispute by comparing views, further explaining or clarifying their position, and if appropriate, offering a compromise in order to resolve the dispute." *T.H. v. Martinez,* No. 2:24-CV-887-MIS-KRS, 2026 WL 752643, at *1 (D.N.M. Mar. 17, 2026)( internal quotation marks and citation omitted)). A face-to-face or telephonic discussion would have been helpful here, given the lack of clarity regarding LHM SMH's written explanation of the undue burden it claims that responding to Interrogatory No. 4 and RFP No. 4 would impose on it.

For instance, in addition to its objections, LHM SWH stated in its response to Interrogatory No. 4 that, "from November 29, 2020 through the date of the transaction at issue, and with respect to sales of new vehicles with preexisting damage in excess of 6% of the sales price of such vehicle, … to the best of [LHM SWH's] knowledge, there were no such transactions/sales." (Doc. 42-1 at 6-7). That statement begs the question of how LHM SWH determined that there were no such transactions/sales, when making such a determination is at tension with LHM SWH's objection that it would involve a "herculean effort" for it to determine which vehicles it sold in a specific time-period suffered prior damage that exceeded 6% of the sales price.

In addition, LHM SMH's written response contradicts itself in stating in part (i) that the deal jackets are maintained in electronic format, while stating in part (ii) that the deal jackets "are *not* maintained electronically" (Doc. 42-1 at 6 (emphasis added)); as well as by suggesting with the use of the connector "and" between parts (i) and (ii) that two separate stages of review would have to be conducted. Although it has never clarified whether its written response to Interrogatory No. 4 is accurate as written, in its response to the Motion LHM SMH seems to indicate that a review of *either* electronic files of the deal jackets, *or* the off-site paper files, would be required. *See* (Doc. 52 at 5 (LHM SMH Response Brief) ("the production Plaintiff seeks requires a manual review of each transaction on the file or a manual review of the hard copies"); *see also* (Doc 52 at

46 (Harvey Affidavit, ¶ 8 (stating that "documents for the Relevant Period exist in digital format," but that to extract the relevant files would require manual review of each transaction, either "on this file [i.e., the electronic file], or a manual review of the hard copies")). Still, according to LHM SMH, "[r]eview under either format is a monumental task as each deal jacket can only be pulled on an individual basis," which "would take several months" to accomplish assuming "a full-time team of employees dedicated solely to this task working standard business hours." (Doc 52 at 46 (Harvey Affidavit, *Id.* ¶¶ 8, 9)). Plaintiff, on the other hand, responds in his reply brief that the asserted undue burden is "questionable" because "LHM uses a dealer management system called CDK Global," which is "the national market leader for dealer case management systems" and "provides a comprehensive, complex platform that covers all aspects of a dealership." (Doc. 62 at 3 (citing *www.ckdglobal.com*)).

In light of the lack of clarity in LHM SWH's response, the Court finds that LHM SWH has not met its burden of demonstrating that the task of responding to Interrogatory No. 4 and RFP No. 4 is too burdensome and hence is not proportional to the needs of the case. The Court also finds LHM SWH's objection unconvincing because LHM SWH appears to have done nothing by way of seeking a compromise solution that would minimize or lessen the burden to it from responding. As previously discussed, LHM SWH cannot argue that the information sought is of marginal relevance so that the discovery could be disallowed altogether on that basis; the information is in fact crucial to Plaintiff's case. *See Salmeron*, 220 F.R.D. at 670. Therefore, LHM SWH has a duty to work with Plaintiff to obtain the information he seeks through the least burdensome means possible. Plaintiff mentioned in his reply brief that he may need to depose Mr. Harvey to get more information about the burden LHM SWH claims searching for the relevant information would entail. (*Id.*). Plaintiff also pointed out that, according to Mr. Harvey, LHM

SWH sold approximately 3,356 new and used vehicles in the original time-period covered by Interrogatory No. 4 and RFP No. 4, and that, by offering to narrow the scope of those discovery requests to a twenty-four month time-period as he has done, Plaintiff has reduced the number of new and used vehicle sales that would have to be examined to around only 1,368. (Doc. 62 at 5). Still, LHM SWH continues to stand on its original objection, and, as far as the Court can tell, no further efforts were made by the parties to resolve this dispute. Nor has LHM SWH clarified its undue burden argument by filing a surreply brief, as it suggested it would do at the informal discovery conference held in February. (Doc. 64 at 2).

"[A] party 'may not excuse itself from compliance with Rule 34 ... by utilizing a system of record-keeping which conceals rather than discloses relevant records, or makes it unduly difficult to identify or locate them, thus rendering the production of the documents an excessively burdensome and costly expedition.'" *Oklahoma, ex rel. Edmondson,* No. 05-CV-329-GKF-SAJ, 2007 WL 1498973, at *3 (N.D. Okla. May 17, 2007) (quoting *Kozlowski v. Sears, Roebuck & Co.*, 73 F.R.D. 73, 76 (D. Mass. 1976)). Given the importance of the information sought by Plaintiff, LHM SWH is ordered to respond to Interrogatory No. 4 and RFP No. 4 for the reduced time period suggested by Plaintiff of July 1, 2023 to July 31, 2025. LHM SWH may simply produce the electronic files of the car sales in this time period, thereby transferring the burden of determining which, if any, of those transactions involved sales where the cost of repair or alteration exceeded 6% of the sale price of the vehicle. The Court will enter an agreed confidentiality order to protect LHM SWH's confidential customer information. The parties may negotiate another method of reducing the burden of responding to Interrogatory No. 4 and RFP No. 4 if they wish. For instance, Plaintiff could agree to a "rolling" response whereby LHM SWH would initially search for responsive information in a smaller subset of documents (e.g., a six-month or one year time

period), with additional productions open to negotiation based upon how many relevant transactions in the initial time period were uncovered. But given that the production of the electronic deal jackets for all car sales in the stated twenty-four month period should all but eliminate LHM SWH's undue burden objection, LHM SWH must proceed with responding to the discovery requests in that manner unless doing so is impossible,[5] in which case the parties will need to meet and confer to discuss other solutions, including LHM SWH allowing Plaintiff to physically inspect the boxes containing the hard copies of deal jackets from the relevant time period.

### B.    IDENTIFICATION OF RELEVANT FORMER EMPLOYEES (INTERROGATORY NO. 6)

Interrogatory No. 6 asks LHM SWH to provide the names and known contact information for all former employees, including managers, who worked for LHM SWH in its body shop, sales department, and finance department during the time-period of January 1, 2020 to the present. (Doc. 42-1 at 8). LHM SWH objects, arguing that Interrogatory No. 6 is overly broad and unduly burdensome, and should be limited to "employees who were actively involved in the sales transaction at issue and those who had some sort of role in addressing Plaintiff's concerns/complaints about the subject vehicle and work performed on the vehicle." (*Id.*); *see also* (Doc. 52 at 7).

Plaintiff argues that the identities of former employees beyond those who were associated with the transaction at issue here are relevant to the claims in this matter because those employees "can provide valuable testimony regarding a dealer's regular practices." (Doc. 42 at 9).

---

[5] Electronic production may not be possible due to the need for proprietary software to access the information electronically. In that case, the parties should investigate whether the data can be converted or made accessible electronically through any other means.

Specifically, Plaintiff argues, former employees "can speak more freely than current employees about dealer practices," and may be able to "provide very valuable testimony about other customers who purchased new vehicles with prior damage." (Doc. 62 at 7); *see also* (*id.* at 8 (arguing that "[f]ormer employees are as important as other customers, for establishing a dealer's lack of mistake and intentional and willful behavior, and for supporting an award of punitive damages"). Plaintiff argues that the request is limited to former employees in specific departments who may have relevant information: employees who worked in the body shop may have knowledge of other vehicles sold by LHM SWH with prior damage, while employees who worked in the sales and finance departments could have had "access to information on LHM's CDK system about costs into a vehicle, including repair costs." (*Id.* at 8). Plaintiff points out that LHM SWH has not shown how responding to Interrogatory No. 6 would be unduly burdensome. But recognizing that the time period covered by the Interrogatory may be overly broad, Plaintiff offers to narrow the request to January 1, 2022 through November 29, 2024 (the date of the transaction in this matter). *See* (Doc. 42 at 9). LHM SWH responds that a "temporal limitation alone does not cure a lack of relevance," and that the "Interrogatory still seeks identification of former employees across multiple departments based solely on their prior employment with the Dealership, without any showing that such individuals possess information relevant to Plaintiff's claims or LHM's defenses." (Doc. 52 at 7).

Even after the 2015 amendments to Rule 26(c) went into effect, "[r]elevance is still to be construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on any party's claim or defense." *Landry v. Swire Oilfield Servs., L.L.C.*, 323 F.R.D. 360, 380 (D.N.M. 2018) (internal quotation marks and citations omitted). The Court finds that Interrogatory No. 6 satisfies that standard. *See, e.g., Golden v. Quality Life Servs., LLC,*

16

No. CV 22-579 GJF/GBW, 2023 WL 6540224, at *4 (D.N.M. Oct. 6, 2023) (finding the identities of all nursing staff and house coordinators who worked for Defendants in the last few years" relevant, and that "any minor privacy concerns that are implicated by the disclosure of [basic information about these individuals including their name, address, email address, phone number, job position, and dates of employment with Defendant] under a protective order are outweighed by the relevance of the discovery"); *Ullman*, 2015 WL 11111288, at *2 ("The Court has no trouble concluding that [employees and former employees of Defendant] may indeed have discoverable information about Defendants' wage practices which form the basis of this lawsuit."); *In re Bank of Am. Wage & Hour Emp. Pracs. Litig.*, 275 F.R.D. at 543 ("Although the Bank's former employees may have a privacy interest in disclosure of their identities and contact information, such disclosure does not pose a serious invasion of privacy in routine civil cases," and "these former employees likely have information about the Bank's overtime policies, which … appears relevant.").[6] In light of the broad scope of discovery and the fact that LHM SWH has not shown that responding to Interrogatory No. 6 would be unduly burdensome in any way,[7] the Court finds Plaintiff's time limitation appropriate, and hence the discovery request proportional,[8] and overrules LHM SWH's overly broad and unduly burdensome objections.

---

[6] Similar to its objection to providing contact information for current or former customers, LHM SWH objects to providing contact information for former employees, asserting that "[s]uch individuals may be reached through defense counsel." As shown by the above cited case law, Plaintiff is correct that this objection is "groundless." *See* (Doc. 42 at 9 ("Defendant cannot produce these former employees for deposition or trial, and there is no ethical prohibition on Plaintiff talking to former employees.")).

[7] *See, e.g., Infinity Home Collection v. Coleman*, No. 17-MC-00200-MSK-MEH, 2018 WL 1733262, at *3 (D. Colo. Apr. 10, 2018) ("Regarding Infinity's undue burden contention, Infinity does not specifically explain how responding to this request will be burdensome."); *Simpson v. Univ. of Colo.*, 220 F.R.D. 354, 359 (D. Colo. 2004) ("An objecting party cannot sustain [its] burden with boilerplate claims that the requested discovery is oppressive, burdensome or harassing.").

[8] *See, e.g., Clark v. Hyatt Hotels Corp.,* No. 1:20-CV-01236-RM-SKC, 2022 WL 19416, at *4 (D. Colo. Jan. 3, 2022) ("While Defendants vaguely argue an undue burden to produce this information, the Court finds none. And in this

## C.      IDENTIFICATION AND PRODUCTION OF DOCUMENTS AND INFORMATION ABOUT THE VEHICLE (INTERROGATORY NO. 10 AND RFP NO. 2)

Interrogatory No. 10 asks LHM SWH generally to identify all documents and electronically stored information or data regarding the Vehicle. (Doc. 42-1 a 10). The Interrogatory then lists 19 non-exclusive categories of documents or information concerning the Vehicle that Plaintiff is seeking. (*Id.* at 10-11). RFP No. 2 asks LHM SWH to produce the documents or information identified in response to Interrogatory No. 10. (*Id.* at 16). LHM SWH's response objected on numerous grounds, and then, as to each of the 19 categories, cited specific documents that were produced along with a general reference of "*see also objections.*" In its opening brief, Plaintiff argued that it could not tell from LHM SWH's written responses whether documents were being withheld based on LHM SWH's objections, a concern that was confirmed by LHM SWH's response brief, which defended its written responses by asserting, among other things, that it had identified categories of documents for which it was continuing to search for responsive information, and that that it had "not withdrawn its objections, which remain valid and appropriate under Rule 26." (Doc. 52 at 9). LHM SWH further argued that "the existence of ongoing, good-faith efforts to locate additional responsive materials does not render LHM's responses deficient or justify compelled relief," and that, to the extent it identified any additional responsive materials, it would supplement its responses accordingly. (*Id.*).

Initially, the Court does not agree with LHM SWH that the lack of a specified date for supplementation does not render its response to a discovery request inadequate. Rule 26(e) sets forth a duty to supplement discovery responses, and the Court's Scheduling Order provides that supplementation is due within 30 days of receipt of the information giving rise to the need for

---

sense, the discovery sought is proportional to the needs of the case." (internal citations omitted)), *objections overruled*, No. 20-CV-01236-RM-SKC, 2022 WL 884282 (D. Colo. Mar. 25, 2022).

supplementation, *see* (Doc. 26 at 2). But neither Rule 26(e) nor the Scheduling Order is intended to override the 30-day deadline for discovery responses. If Rule 26(e) were construed otherwise, the 30-day response deadline would be meaningless. A certain amount of flexibility is accorded to parties who, because of the volume of documents sought, need additional time to complete their search for responsive documents. But parties may not rely on the ability to supplement to avoid any deadline whatsoever for conducting a thorough search and producing all responsive documents uncovered by that search.

Beyond the above, LHM SWH's original response to this discovery request left confusion over whether any relevant and responsive information or documents had been withheld on the basis of LHM SWH's objections, in violation of Rule 34(b)(2)(C). *See City of Las Cruces v. United States*, No. CV 17-809 JCH/GBW, 2021 WL 5207098, at *23 (D.N.M. Nov. 9, 2021), *objections overruled*, No. CV 17-809 JCH/GBW, 2022 WL 704123 (D.N.M. Mar. 9, 2022). Therefore, the Court's February 25, 2026 Order partially ruling on Plaintiff's Motion directed LHM SWH to serve a supplemental response making clear whether any information or documents were withheld based upon LHM SWH's objections. According to the Notice filed by Plaintiff as directed by the Court's previous Order (Doc. 79 at 1), LHM SWH's supplemental response (which is not in the record) states that LHM SWH is not withholding any responsive documents. Based on LHM SWH's representation in its supplemental response that, notwithstanding its previously asserted objections, it has produced all documents responsive to Interrogatory No. 10/RFP No. 2, the Court finds that those objections are moot and need not be addressed.

But that does not end the matter. Plaintiff's Notice states that, despite LHM SWH's representation in its supplemental response, Plaintiff believes that all documents responsive to

19

Interrogatory No. 10/RFP No. 2 have *not* been produced. (*Id.*). Plaintiff gives three examples of documents he believes should exist but have not been produced:

- *Documents concerning "optional equipment" installed by LHM SWH on the Vehicle*. Plaintiff states that a former employee has testified that a third-party business comes to the Dealership to install the "optional equipment" on new vehicles, but that LHM SWH has not produced any invoicing to show who did this work to the Vehicle.

- *A damage inspection report for the Vehicle*. Plaintiff states that an inspection would have been performed after the transport company delivered the Vehicle to the Dealership, and a report prepared following the inspection, but that none has been produced.

- *Documents related to LHM SWH repairs to the Vehicle*. Plaintiff states that, prior to selling the Vehicle to Plaintiff, LHM SWH replaced the right front fender on the Vehicle with a fender from another vehicle, but has not produced any documents regarding that repair.

(*Id.*).

As far as the Court can tell, the parties have not met and conferred regarding these remaining matters. Further clarification from LHM SWH concerning the supposedly missing documents might have led to a resolution of this issue without further Court intervention. For instance, Plaintiff asserts in its Notice that a damage inspection report for the Vehicle has not been produced, but the Court notes that LHM SWH's First Supplemental Response, attached to Plaintiff's reply brief, refers to additional documents produced with the supplemental response, including one called a "Muti-Point Inspection Form." (Doc. 62-1 at 9). The Court also notes that, regarding the third category of allegedly missing documents, LHM SWH produce a document referred to as a "Repair Estimate RO# 297998." (*Id.*). The matter of documents showing repairs to the Vehicle gets more confusing in that LHM SWH states in its response brief that it "advised [Plaintiff] that, prior to [Plaintiff's] filing of suit, its employees communicated with New Mexico Collision Center regarding Plaintiff's complaints about the [V]ehicle and its services [whose

services? New Mexico Collision Center's?] in an effort to address those concerns," and that, "[i]n its response to Plaintiff's good faith letter, LHM committed to determining whether any information is available with respect to communication with the manufacturer, transport company, lender, or Collision Center of New Mexico and supplement with any additional information obtained." (Doc. 52 at 9-10). These representations leave the Court wondering what additional information was discovered by LHM SWH following these additional efforts, and if no additional information was discovered, why not and/or what conclusions did LHM SWH draw from those results?

It seems that LHM SWH may not have produced any documents regarding repairs to the Vehicle performed by New Mexico Collision Center because it has concluded that no such documents exist. *See* (Doc. 62-1 at 10 (LHM SWH's First Supplemental Response to Interrogatory No. 11) (stating that New Mexico Collision did not perform any repairs to the vehicle at issue *prior* to the sale of the Vehicle to Plaintiff, and that any repairs it performed on the Vehicle *after* the sale at issue "were not invoiced by such company, so the nature and extent of the repairs are currently unknown to LHM").[9] Plaintiff apparently believes, based on other information in his possession, that New Mexico Collision did in fact repair the Vehicle prior to the sale. But if LHM SWH claims otherwise, that is a merits issue. Insofar as Plaintiff's Motion is concerned, absent "information that calls into question the veracity of [LHM SWH's] representation," *F.D.I.C. v. McCaffree*, 289 F.R.D. 331, 338 (D. Kan. 2012), the Court cannot compel LHM SWH to produce documents that it claims do not exist. *See, e.g., Sonnino v. Univ. Kansas Hosp. Auth.,* 220 F.R.D. 633, 640 (D. Kan. 2004). Plaintiff is entitled to clarity on the issue, however, as well as some explanation concerning

---

[9] *See also* (Doc. 1-2 ¶ 35 (First Amended Complaint, alleging that New Mexico Collision replaced the bumper and bracket on the Vehicle and did some paint work); Doc. 18 ¶ 35 (LHM SWH Answer, denying ¶ 35 "upon information and belief")).

the reasons why no documents in the specified categories were produced. *See, e.g., Wuhan Healthgen Biotechnology Corp. v. ExpressTec LLC*, No. 21-4008-KHV-ADM, 2025 WL 2430535, at \*2 (D. Kan. Aug. 22, 2025). The Court therefore will require LHM SWH to serve a supplemental written response that clarifies LHM SWH's production, or lack thereof, for each of the three categories cited in the Notice and listed above. The supplemental response must be signed under oath by LHM SWH's counsel *and* a client representative with decision-making authority over this litigation. The supplemental response must certify that LHM SWH has conducted a complete and thorough search for documents in the three listed categories. The supplemental response then must state for each of the above listed categories either (1) that all responsive documents have been produced, identifying the responsive documents by Bates number, with any additional responsive documents being produced simultaneous with the supplemental response; or (2) that no responsive documents exist, together with an explanation for the absence of such documents.[10] LHM SWH's supplemental response should specifically address Plaintiff's representation in the Notice that he has "evidence from other sources that the right front fender that was replaced on the Vehicle—which Plaintiff alleges was replaced prior to his purchase—was taken from another new vehicle that had been in Defendant's inventory around the same time," and that "it appears that Defendant performed 'body service' to that other vehicle on October 1, 2024, which was prior to Defendant selling Plaintiff the Vehicle." (Doc. 79 at 1-2). It should also address Plaintiff's representation in the Notice that a former employee has testified that a third-party business comes to Defendant's lot to install the "optional" equipment on new vehicles. (*Id.* at 1).

---

[10] Possible explanations might include: "no repairs prior to the sale of the Vehicle to Plaintiff were ever done to the Vehicle"; "repairs to the Vehicle performed after the sale to Plaintiff were performed by Collision Center of New Mexico at no charge and LHM SWH does not have any documents in its possession or control that refer or reflect those repairs"; a damage inspection report for the Vehicle should have been performed but we cannot find it in our records"; "the only non-manufacturer installed options were installed by the Dealership without any third-party involvement," etc.

D.   **DESCRIPTION OF ANY APPRAISALS, INSPECTIONS, REPAIRS, SERVICING, OR RECONDITIONING PERFORMED ON THE VEHICLE (INTERROGATORY NO. 11)**

Plaintiff's Notice states that Interrogatory No. 11 has been resolved with one exception: LHM SWH "has not identified the third party who added the 'optional' equipment to the vehicle before it was sold to Plaintiff." (Doc. 79 at 2). Once again, the parties have not met and conferred regarding this remaining issue. At the very least, LHM SWH could have provided some clarification concerning why it has not identified a third party who added the optional equipment to the vehicle. From the documents before the Court, it appears that optional equipment was added by either the manufacturer,[11] or by the Dealership.[12] But Plaintiff contends that a third-party was involved. *See* (Doc. 79 at 1 (stating that a former employee has testified that a third-party business comes to Defendant's lot to install the "optional" equipment on new vehicles)).[13] In any event, clarification is in order. Accordingly, the Court orders LHM SWH to serve a supplemental response, certified as indicated above, and identifying each piece of optional equipment added to the Vehicle, with a statement identifying the person and/or entity who added that particular item, including all optional items whether added by the manufacturer, the Dealership, or some third party. LHM SWH's supplemental response should specifically address the testimony of the former employee referenced in Plaintiff's Notice. LHM SWH may combine this supplemental response with its supplemental response to Interrogatory No. 10 and RFP No. 2 to avoid any overlap.

---

[11] *See* (Doc. 52 at 53 (identifying features added by the manufacturer, including carpeted floor mats, cargo tray, and tow hitch).

[12] *See id.* at 54 (identifying tint, door edge guards, and door handle cup guards, as "Dealer Installed Options").

[13] LHM SWH's answer to the First Amended Complaint could be interpreted as denying that a third-party added any optional equipment to the Vehicle. *See* (Doc. 1-2 at 3 (First Amended Complaint ¶ 17 (alleging that LHM SWH told Plaintiff that the optional items were added by the manufacturer and were not optional, but that this statement was a misrepresentation"); Doc. 18 at 3 (LHM SWH Answer ¶ 17 (denying paragraph 17 "upon information and belief")).

E.    NET WORTH DOCUMENTS (RFP NOS. 6 & 7)

Plaintiff reports in his Notice that LHM SWH has agreed to produce the requested documents "once a mutually acceptable protective order is entered," and that "[t]he parties are working on that confidentiality order now." (Doc. 79 at 2). It has been over a month since Plaintiff filed the Notice, but the parties have yet to seek entry of an agreed confidentiality order. To the extent that the parties are having trouble reaching agreement concerning the provisions of an agreed confidentiality order, they are advised to consult other cases before the undersigned in which agreed or stipulated confidentiality orders were approved by this Court.[14]

F.    DOCUMENTS REGARDING DEFENDANT'S PRICE REPRESENTATIONS ON NEW VEHICLES (RFP NO. 11)

RFP No. 11 seeks the retail purchase agreement, any addendum to that agreement, the Monroney sticker, and any supplemental dealer price sticker for each new vehicle LHM SWH sold for a six-month period from August 1, 2024 until December 31, 2024. (Doc. 42-1 at 21). This discovery request is related to Plaintiff's claim that LHM SWH misrepresented the price of the Vehicle. Plaintiff argues that, when selling a new vehicle, a dealer is required to post the manufacturer's suggested retail price, via the federally required Monroney sticker, *see* 15 U.S.C. §§ 1231-1233, which will identify all equipment installed by the manufacturer of the vehicle. If a dealer adds other equipment after receiving the vehicle, it is required to attach a dealer supplemental price sticker, disclosing the additional price. *See* (Doc. 42 at 15; Doc. 62 at 11 (citing N.M. Admin. Code §§ 12.2.4.21(D) and 12.2.4.27))). Plaintiff argues that LHM SWH added equipment to the Vehicle, but failed to disclose the price increase in a supplemental dealer sticker. (*Id.*). LHM SWH argues that Plaintiff's claim that it failed to disclose the price increase in a

---

[14] *See, e.g., Rawson v. Associated Metals, LLC,* 2:24-cv-1012-JHR-KRS, Doc. 63 (D.N.M. Feb. 6, 2026); *Logan v. Equifax Info. Servs., LLC,* 1:25-cv-01176-MIS-KRS, Doc. 25 (D.N.M. Jan. 29, 2026).

supplemental dealer sticker is without merit, and attaches to its response brief a copy of the supplemental dealer vehicle with the required disclosure. *See* (Doc. 52 at 54). According to Plaintiff, however, after LHM SWH produced the supplemental dealer pricing sticker in discovery, his counsel asked to see the original deal file. And, after examining that file, his counsel purportedly discovered that the *original* supplemental sticker was in that file, which, according to Plaintiff, means that the supplemental sticker was not on the window of the Vehicle at the time Plaintiff agreed to purchase it.

LHM SWH's argument opposing this discovery request appears to be that the price misrepresentation claim has no merit because the supplemental disclosure in fact was provided. That merits issue has not been resolved yet. If in fact Plaintiff is correct and the added price from the dealer installed options was not included in the advertised (displayed) price of the Vehicle, then Plaintiff may have a valid claim that LHM SWH misrepresented the price of the Vehicle. The existence in the file of a supplemental price sticker does not definitively disprove Plaintiff's claim. And if LHM SWH misrepresented the price of the Vehicle to Plaintiff, then it may have done so to other customers as well, which would be relevant for the same reasons already discussed concerning other customers to whom LHM SWH may have sold vehicles with prior damage. LHM SWH's objections to RFP No. 11 are similar to those it raised in response to Interrogatory No 4 and RFP No. 4. For the same reasons the Court rejected those objections earlier in this opinion, it also rejects them now in relation to RFP No. 11. Furthermore, the Court notes that RFP No. 11 is significantly more limited than RFP No. 4 in time scope; it seeks relevant documents in a six-month period only. Also, unlike RFP No. 4, it is limited to new car sales only. LHM SWH has not explained why it would be unduly burdensome for it to produce a limited number of documents that would be needed for Plaintiff to determine if customers who purchased new vehicles in the

25

six-month period in question received an accurate price disclosure. Plaintiff asks that LHM SWH be ordered to produce the requested documents and that the supplemental dealer sticker be scanned and produced in color. The Court grants the request, but allows that, in the alternative, LHM SWH may produce the documents in question electronically, or, if it prefers, it may allow Plaintiff to inspect and make its own color copies of the original documents.

### CONCLUSION

For the foregoing reasons, Plaintiff's Opposed Motion To Compel Defendant LHM SWH, LLC To Provide Complete Responses To First Set Of Discovery, **Doc. 41**, is **GRANTED IN PART** and **DENIED IN PART**. Except with respect to Interrogatory No. 4 and RFP No. 4, Defendant LHM SWH is **ORDERED** to serve Plaintiff with supplemental written responses and produce supplemental documents pursuant to this order on or before **May 25, 2026**. The parties are ordered to meet and confer regarding Interrogatory No. 4 and RFP No. 4 to attempt to reach agreement on a reasonable time frame for LHM SWH to respond. For the reasons previously stated on the record, the Court does not award fees and costs.

IT IS SO ORDERED this 11th day of May, 2026.

_____
KEVIN R. SWEAZEA
UNITED STATES MAGISTRATE JUDGE